# Wise v. Loeb.

*Banks and banking—Partnership—Powers of cashier.*

The managing partner of a firm doing a banking business, who is also the cashier, has authority to make an agreement by which a promissory note shall be charged to a third party in pursuance of a previous agreement between the bank and the maker of the note.

The cashier of a bank agreed, under an arrangement with the maker of a promissory note held by the bank, that the note should be charged to another depositor who agreed to pay it. At the time the transaction took place, the collateral security for the note was delivered to the maker, but the note itself having been mislaid, was not delivered, but the cashier promised the maker to give it to him as soon as he found it. The account of the depositor who agreed to pay the note was at the time overdrawn, but it appeared that he had given the bank a mortgage to cover overdrafts.

*Held,* in an action by the receiver of the bank on the note against the maker, that the maker's liability was a question for the jury.

*Infant—Contract—Disaffirmance of contract.*

When an infant attains majority and does not mean to stand by a contract made in infancy, his proper course is to disaffirm it by an act as solemn as that by which it was made, and ratification may be inferred from his failure to disaffirm within a reasonable time after coming of age, as well as from positive recognition of the contract.

Where an infant executes a judgment note in infancy, and after he becomes of age applies to the court to open the judgment, and does not in these proceedings allege his infancy as a defense, he will be presumed to have affirmed the note.

Argued Oct. 25, 1900. Appeal, No. 100, Oct. T., 1900, by defendant, from judgment of C. P. Clearfield Co., May T., 1895, No. 310, on verdict for plaintiff in case of M. M. Wise, cashier to use of Hugh McCullough, Receiver of the Bank of DuBois, v. Norman Loeb. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Issue to determine the validity entered upon a judgment note. Before GORDON, P. J.

The court directed a verdict in favor of the plaintiff, reserving the following question:

Now, May 23, 1898, the jury are directed to render verdict in favor of plaintiff against defendant for debt, $　　 , attorney's commission, $　　 , total $325.22, being amount of note, with interest and attorney's commission, subject to the opinion of the court on the legal questions raised by the foregoing points which are reserved, to wit: whether under the evidence plaintiff is entitled to recover, it showing:

1. That defendant was born May 23; 1872, and consequently was a minor on February 12, 1891, the date when the note in suit was given, and that in his proceeding to open the judgment he did not plead his minority, and first pleaded it at the trial.

2. That at the time the arrangement was made between M. W. Wise, cashier, and defendant and Harry Loeb, when the cashier surrendered to defendant the stock held by the bank as collateral security on the note, and agreed to charge the note up to Harry Loeb, (*a*) no new consideration passed, (*b*) the note was not so charged, (*c*) Harry Loeb was at that time in

debt to the bank, but, (*d*) his checks and notes drawn upon and maturing at the bank were being honored at that period.

The court in an opinion by GORDON, P. J., directed judgment to be entered upon the verdict.

*Error assigned* was in directing judgment on the verdict.

*A. L. Cole,* with him *H. A. Moore,* for appellant.

*J. B. McEnally,* with him *W. C. Arnold* and *D. W. McCurdy,* for appellee.

OPINION BY BEAVER, J., January 22, 1901 :

The legal plaintiff was not only the cashier but a partner and apparently the only managing partner of the firm doing business as the Bank of Dubois. He had undoubted authority, therefore, to make the agreement, in and by which a note due by defendant was charged or agreed to be charged to Harry Loeb in pursuance of a previous arrangement between plaintiff and defendant. The latter's testimony in regard to the transaction, in brief, is this : " I told Mr. Wise to charge the note up to me, if it was satisfactory ; and Mr. Wise said ' All right ' and then Norman asked him for his note and his collateral—his building and loan stock—and Mal handed him out his building and loan stock that seemed to be laying to one side of the window, and said he didn't have the note now and would hand it to him as soon as he found it—he was busy then. Q. What was said, if anything, about Norman's relation to the note from that time on ? A. Norman's relation to the note was nothing. It was charged to me. I considered I owed it and not him."

The court below treated this as an executory contract, held to be so apparently because the note of the defendant was not delivered to him at the time of the transaction above referred to. As we view the matter, however, it was not an executory contract. The transaction was completed, so far as the plaintiff and the defendant were concerned. The collateral security for the note was delivered and the note would undoubtedly have been delivered with it, if it had been within reach. It was not delivered simply because it had been mislaid. The fact that Harry Loeb, who became responsible for the payment

of the note, had an overdrawn account at the time, makes no difference, so far as the contract was concerned. The testimony shows that he had given a mortgage to protect the bank against overdrafts and, if the cashier and partner was willing to accept him for the payment of the note and discharge the defendant, and did so, the transaction was complete and the defendant was discharged. The question as to whether or not this was the case was at the least for the jury, and we think it was error to pass upon it as a matter of law and direct the jury to find for the plaintiff.

The question as to the defendant's minority, when the contract, of which the note was evidence in part, was entered into, and his right to avoid it for that reason, was, we think, properly disposed of by the court below. "When the infant attains majority and does not mean to stand by a contract made in infancy, his proper course is to disaffirm it by an act as solemn as that by which it was made ; and ratification may be inferred from his failure to disaffirm within a reasonable time after coming of age, as well as from positive recognition of the contract:" 8 P. & L. Dig. of Dec. 13997. The defendant had an opportunity to be heard in disaffirmance of his contract, when he presented his petition to the court to have the judgment opened. It was his duty, when first called upon to speak, to disaffirm the contract, if he intended to avoid it by reason of his minority. His failure to do so must be regarded as an affirmance. It was too late to raise the question upon the trial.

Judgment reversed and a new venire awarded.